O

# United States District Court
# Central District of California

GEORGE KRUSE, *et al.*,

    Plaintiffs,

    v.

ACTUANT CORPORATION, *et al.*,

    Defendants.

Case No. 2:19-cv-09540-ODW (RAOx)

**ORDER DENYING PLAINTIFFS' MOTION TO REMAND [140]**

## I.     INTRODUCTION

Plaintiffs George Kruse and his wife Shigeko Kruse move to remand this asbestos action to state court for lack of subject-matter jurisdiction (the "Motion"). (ECF No. 140.) For the reasons that follow, the Court **DENIES** Plaintiffs' Motion.[1]

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On June 13, 2019, George Kruse ("Mr. Kruse") was diagnosed with malignant mesothelioma. (Compl. ¶ 13, ECF No. 1–1.) Plaintiffs allege that Mr. Kruse developed mesothelioma because he was exposed to asbestos-containing avionics equipment while he served as an aviation electronics technician in the United States

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

Navy ("Navy") and the United States Air Force ("Air Force") from 1955 to 1975. (Compl. ¶ 12, Ex. A.)

On October 17, 2019, Plaintiffs filed a personal injury Complaint in the Superior Court of California, County of Los Angeles against over two dozen military contractors and other entities asserting four causes of action for: (1) negligence; (2) strict liability; (3) conspiracy; and (4) loss of consortium.  (Compl. ¶¶ 2–45.) Defendants are mostly companies that manufactured products which Plaintiffs allege contained asbestos and to which Mr. Kruse was allegedly exposed during his service in the Navy and Air Force.  (Compl. ¶¶ 3, 13.)  Plaintiffs specifically allege that Mr. Kruse suffered asbestos exposure while working on the USS Salisbury Sound (AV-13), a seaplane tender, and on military aircrafts such as the B-52, B-57, B-56, KB-50J, RB-50, F-101, F-102, and KC-135 during his service.  (Decl. of Lisa M. Barley in Support of the Motion ("Barley Decl."), Ex. B, ECF No. 140–2.)  Plaintiffs' tort claims stem primarily from design defect and failure-to-warn allegations.  (Compl. ¶¶ 7–8.)

On November 6, 2019, Defendant Lockheed Martin Corporation ("Lockheed") removed the action to this Court based on the Federal Officer Removal statute. (Lockheed Notice of Removal ¶¶ 8–12, ECF No. 1.)  Lockheed contends that the products at issue were manufactured in accordance with the demands of the United States military, both in terms of design and warning requirements.  (Lockheed Notice of Removal ¶ 10.)  Lockheed argues such specifications present a colorable argument that it is a government contractor who is therefore immune from state tort law. (Lockheed Notice of Removal ¶ 11.)  Six out of the thirty-one named Defendants joined Lockheed's removal, asserting additional grounds for removal, including original jurisdiction under 28 U.S.C. § 1331 because Mr. Kruse's alleged injuries occurred within a federal enclave.  (The Boeing Company ("Boeing") Notice of Joinder, ECF No. 12; General Dynamics Corporation ("General Dynamics") Notice of Joinder, ECF Nos. 26 and 36; Crane Co. ("Crane") Notice of Joinder, ECF No. 30;

Rockwell Collins, Inc. ("Rockwell Collins") Notice of Joinder, ECF No. 32; AVCO Corporation ("AVCO") Notice of Joinder, ECF No. 46; and Unisys Corporation ("Unisys") Notice of Joinder, ECF No. 63.)

Plaintiffs moved to remand on January 15, 2020. (*See generally* Motion.) Defendants Lockheed, Boeing, General Dynamics, Crane, Rockwell Collins, AVCO, and Unisys filed oppositions on February 10, 2020. (*See* General Dynamics Opp'n to Mot., ECF No. 154; Crane Opp'n to Mot., ECF No. 153; AVCO Opp'n to Mot., ECF No. 152; Lockheed Opp'n to Mot., ECF No. 151; Rockwell Collins Opp'n to Mot., ECF No. 150; Boeing Opp'n to Mot., ECF No. 149; Unisys Opp'n to Mot., ECF No. 148 (collectively, "Opp'ns").) Defendant Crane withdrew its opposition to the Motion on February 13, 2020. (Crane Notice of Withdrawal, ECF No. 158.) Plaintiffs filed replies on February 14, 2020. (*See* Replies in Supp. of Mot., ECF Nos. 161, 162, 163, 164, and 165.) Crane was dismissed from the action without prejudice on February 18, 2020. (ECF No. 166.)

### III. LEGAL STANDARD

Federal courts have subject-matter jurisdiction only as authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court only if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). Federal courts have original jurisdiction where an action arises under federal law or where each plaintiff's citizenship is diverse from each defendant's citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332(a). Original federal jurisdiction will lie over a state law claim only when a state law claim necessarily turns on a substantial and actually disputed federal question. *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996).

A motion to remand challenges the propriety of an action's removal to federal court. 28 U.S.C. § 1447. A motion to remand is the "the functional equivalent of a

defendant's motion to dismiss for lack of subject-matter jurisdiction" under Rule 12(b)(1). *See Leite v. Crane Co.,* 749 F.3d 1117, 1122 (9th Cir. 2014). "Like plaintiffs pleading subject-matter jurisdiction under Rule 8(a)(1), a defendant seeking to remove an action may not offer mere legal conclusions; it must allege the underlying facts supporting each of the requirements for removal jurisdiction." *Leite,* 749 F.3d at 1122. A removing party is not required to substantiate its notice of removal with evidentiary support but need only "provide 'a short and plain statement of the grounds for removal.'" *Id.* (quoting 28 U.S.C. § 1446(a)).

A plaintiff may move to remand by raising "either a facial attack or a factual attack on the defendant's jurisdictional allegations." *Leite,* 749 F.3d at 1122. The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6) by accepting the removing party's allegations as true and drawing all reasonable inferences in the removing party's favor in order to determine whether the allegations are sufficient as a legal matter to invoke federal jurisdiction. *Id.* at 1121 (citing *Pride v. Correa,* 719 F.3d 1130, 1133 (9th Cir. 2013)). In response to a factual attack, which contests the truth of the removing party's factual allegations, the removing party "must support its jurisdictional allegations with competent proof . . . under the same evidentiary standard that governs in the summary judgment context." *Id.* at 1121 (citations omitted). The party seeking removal ultimately "bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Id.* If the existence of jurisdiction turns on disputed factual issues, however, the Court may resolve those factual disputes itself. *Id.*

## IV. DISCUSSION

Plaintiffs move to remand the action arguing that Lockheed failed to meet its burden to show removal is proper.[2] (*See* Mot.) Specifically, Plaintiffs argue that

---

[2] In their Motion, Plaintiffs mention that only six of thirty-one Defendants joined Lockheed's removal. (Mot. 4.) However, Plaintiffs only move to remand based on jurisdictional, not procedural

Lockheed did not show that its manufacture and sale of aircraft to the U.S. Military is a sufficient basis for the exercise of federal officer jurisdiction. (Mot. 2.) Defendants urge the Court to deny Plaintiffs' Motion on several grounds: (1) the Federal Officer Removal statute provides Defendants a colorable government contractor defense to Plaintiffs' design defect claims; (2) the Federal Officer Removal statute provides Defendants a colorable government contractor defense to Plaintiffs' failure-to-warn claims; (3) removal is proper because Defendants enjoy derivative sovereign immunity; (4) the "federal enclave" doctrine warrants removal; and (5) the "combatant activities" exception to the Federal Tort Claims Act ("FTCA") justifies removal. Because the Court finds that the Federal Officer Removal statute applies to Plaintiffs' design defect claims, the Court does not reach Defendants' remaining arguments.

**A.     Federal Officer Removal Statute**

Defendants argue removal of this action is valid under the Federal Officer Removal statute as set forth in 28 U.S.C. § 1442(a)(1), which "authorizes removal of a civil action brought against any person acting under an officer of the United States for or relating to any act under color of such office." *Leite*, 749 F.3d at 1120 (internal citations and quotation marks omitted). To remove an action under section 1442(a)(1), a defendant must establish: (1) that it is a person within the meaning of the statute; (2) that it can assert a colorable federal defense; and (3) that there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiffs' claims. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006).

The first element is not in dispute. Indeed, "[t]he courts of appeals have uniformly held that corporations are 'person[s]' under § 1442(a)(1)." *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (collecting

---

deficiencies. (Mot. 5; Decl. of Lisa M. Barley in Support of the Motion ("Barley Decl."), Ex. B.) Accordingly, the Court does not address the procedural deficiency.

cases). Plaintiffs contend that Defendants fail to assert a colorable federal defense and that Defendants have not shown that there is a causal nexus between Plaintiffs' claims and the actions Defendants allegedly performed under federal officers. The Court addresses each of those arguments in turn.

### 1. Colorable Federal Defense

As an initial matter, Defendants argue that Plaintiffs' challenge to removal must be deemed facial because Plaintiffs have introduced no extrinsic evidence to support their Motion, which is generally required to bring a factual challenge. *Leite*, 749 F.3d at 1121; *see also Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004). Plaintiffs respond that Defendants have made neither a facial nor a factual showing that their alleged government contractor defenses are colorable. (*See* Replies 4.) The Court finds that under both standards, Defendants' jurisdictional allegations survive the Motion.

Federal contractors may remove cases based on acts performed under color of a federal office if they assert a colorable federal defense. *Durham*, 445 F.3d at 1251. In order to do so, the removing defendant need not show that the defense is meritorious, but that there is a legitimate question of federal law to be decided regarding the validity of the defense. *See Mesa v. California*, 489 U.S. 121, 129 (1989). "The party seeking removal 'need not win his case before he can have it removed.'" *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Moreover, the Ninth Circuit has broadly construed the Federal Officer Removal statute in favor of removal. *Durham*, 445 F.3d at 1252. Removal under Section 1442(a)(1) is not subject to the well-pleaded complaint rule, and defendants removing thereunder may remove an entire action unilaterally, without the consent of other defendants.[3] *Durham*, 445 F.3d at 1253. To remain in federal court, a defendant need not demonstrate a colorable federal defense

---

[3] Because any Defendant may unilaterally remove this action under 28 U.S.C. § 1442(a)(1), the Court limits its removal analysis to Defendants Lockheed and General Dynamics' jurisdictional allegations due to those parties' submission of substantive extrinsic evidence. The Court does not rule on the merits of Defendants Boeing, Rockwell Collins, AVCO, and Unisys' removal claims.

to plaintiff's entire state law case; rather, a defendant need only demonstrate a colorable federal defense to any one of plaintiff's claims. *National Audubon Soc. v. Dept. of Water & Power*, 496 F. Supp. 499, 509 (E.D. Cal. 1980) ("It is well settled that if one claim cognizable under Section 1442 is present, the entire action is removed, regardless of the relationship between the Section 1442 claim and the non-removable claims.").

Defendants here assert the government contractor defense to Plaintiffs' design defect allegations as recognized in *Boyle v. United Techs. Corp.,* 487 U.S. 500 (1988). Under the framework of *Boyle*, military contractors are immunized from liability when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *See Boyle*, 487 U.S. at 512. This defense protects "government contractors from tort liability that arises as a result of the contractor's compliance with the specifications of a federal government contract." *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 731 (9th Cir. 2015) (quoting *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011)).

### a. *Reasonably Precise Specifications*

Turning to the first prong of the *Boyle* inquiry, a defendant must show "a continuous exchange and back and forth dialogue between the contractor and the government," that amounts to "more than a cursory rubber stamp" of the product's design, development, and production. *Cabalce*, 797 F.3d at 731.

According to Lockheed, the aircrafts it supplied to the Navy and Air Force were manufactured "in accordance with detailed specifications approved by the United States Government and under the direct supervision, control, orders, and directives of a federal officer acting under color of federal office." (Lockheed Notice of Removal ¶ 4.) To demonstrate this, Lockheed submits the declaration of retired Systems Engineer for Field Technical Support, Valentino Jimenez ("Mr. Jimenez"). (Decl. of

Valentino Jimenez in Support of Lockheed's Opp'n ("Jimenez Decl.") ¶ 2, ECF No. 151–3.)  Mr. Jimenez served in the Air Force from 1967 to 1971 where he "performed hands-on maintenance, repair, and overhaul work on various airframe and engine components of military aircraft."  (Jimenez Decl. ¶ 3.)  After his military service, Mr. Jimenez was "honorably discharged as the civilian equivalent of a Certified Aircraft Electrical Mechanic and Technician."  (*Id*.)  Apart from his service, Mr. Jimenez also "performed both supervisorial and hands-on aviation mechanical work on various Lockheed Martin-manufactured aircraft[s]" as a Lockheed employee.  (Jimenez Decl. ¶ 4.)  Mr. Jimenez states categorically that the government approved reasonably precise specifications for the Lockheed-manufactured B-57 and remained intimately involved in all phases of aircraft development.  (Jimenez Decl. ¶¶ 13–20.)  For instance, military representatives were stationed at Lockheed's manufacturing facilities to oversee design and manufacture, to perform inspections, and to inspect and test each aircraft before accepting delivery.  (Jimenez Decl. ¶ 16.)  In fact, Mr. Jimenez attests that the military not only "approve[d] reasonably precise specifications" for B-57 aircraft, but it also supplied the very components themselves.  (Jimenez Decl. ¶¶ 14–15.)

General Dynamics similarly submits the declaration of retired Technology Manager and Business Development Specialist, Bradford W. Heil ("Mr. Heil"), to explain that it designed and manufactured the Convair F-102 fighter aircraft for the Air Force between 1951 and 1958 based on the military's precise and detailed specifications.  (Decl. of Bradford W. Heil in Support of General Dynamics' Opp'n ("Heil Decl.") ¶¶ 1, 10 b–g, ECF No. 154–1.)  In his declaration, Mr. Heil describes his familiarity with "plans, designs and specifications used in the construction and repair of U.S. Navy vessels, including federal and U.S. Navy plans, specifications (MIL-Specs), qualified products lists (QPLs), technical manuals, engineering designs and [] other materials . . . including the use of asbestos containing materials in and on such equipment."  (Heil Decl. ¶ 1.)  Based on his experience, Mr. Heil opines that the

contract procurement protocols of the Air Force are "almost identical" to those of the Navy. (Heil Decl. ¶ 10 c.) Mr. Hein corroborates the allegations of General Dynamics' notice of removal by declaring that "to the extent that the design and manufacture of the Convair F-102 included asbestos-containing materials, the U.S. Government approved reasonably precise specifications for such components." (Heil Decl. ¶ 10 f.) Further, "[a]ny decision regarding asbestos in such aircraft or the component parts thereof was under the full control, direction and discretion of the U.S. Government." (Heil Decl. ¶ 10 f; *see also* General Dynamics Notice of Joinder ¶ 18, ECF No. 36.)

In their replies to Defendants' opposition papers, Plaintiffs emphasize that Defendants' notices of removal and submitted declarations refer to no particular military specification or contractual provision requiring the use of asbestos materials. (*See* Replies 7–9.) However, Plaintiffs' arguments run contrary to *Leite*. There, the Ninth Circuit held that similar declarations describing the extent to which "the Navy issued detailed specifications governing the form and content of all warnings[—not merely warnings relating to asbestos—]that equipment manufacturers were required to provide, both on the equipment itself and in accompanying technical manuals," sufficed for the first prong, at least at the removal stage. *Leite*, 749 F.3d at 1123. This remained true even despite the *Leite* plaintiffs submitting "extensive evidence [disputing defendant's evidence,] . . . including military specifications, technical manuals, warning label guides, and deposition excerpts." *Id.* at 1122. Here, Plaintiffs offer no such evidence to counter Defendants' allegations that the military exercised direct control over all aspects of the design, development, and production of Defendants' asbestos-containing avionics equipment. Thus, in the context of removal, Defendants' submitted affidavits suffice for the first prong.

### b. *Conforming Equipment*

With respect to the second prong, Defendants must demonstrate that their avionics equipment conformed to military specifications. To establish conformity

9

with the Navy and Air Force's specifications, Defendants must show "extensive government involvement in the design, review, development, and testing of a product" and "extensive acceptance and use of the product following production." *Getz*, 654 F.3d at 864.

Plaintiffs do not appear to contest Lockheed's assertion that the "military's acceptance of each aircraft means that that aircraft was designed and assembled in conformance with government contracts and all military-mandated specifications." (Jimenez Decl. ¶ 16.) Lockheed further asserts that military personnel inspected and tested each aircraft before accepting delivery, thus ensuring Lockheed's full compliance with all required specifications. (Jimenez Decl. ¶ 16.) Defendants have thus fulfilled the second prong under *Boyle*.

### c. Unknown Dangers Warning

To fulfill the third prong, a defendant must allege that it warned the government about the dangers of using specific equipment that were known to the contractor but unknown to the government. *Boyle*, 487 U.S. at 512.

The Jimenez declaration explicitly states that "during the period of time that [Mr. Kruse] allegedly encountered B-57 aircraft, Lockheed Martin had no knowledge superior to that of the United States Government of any hazards associated with the use of asbestos in general or on aircraft in particular." (Jimenez Decl. ¶ 21.) The language of *Boyle* is clear in that it only requires that contractors issue warnings about dangers of which the United States is not aware. "*Boyle* does not require the contractor to warn the government of every possible danger—only those known to it and not to the government." *See Burdett v. CBS Corp.*, No. CV 17-04581-AB (SKX), 2017 WL 6514649, at *4 (C.D. Cal. Dec. 20, 2017) (quoting *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1001 (7th Cir. 1996)). Because Lockheed has proffered a declaration showing that the United States was aware of the hazards associated with asbestos exposure, the third prong of *Boyle* is therefore satisfied. Based on the foregoing, the Court finds that Defendants have sufficiently alleged the existence of a

colorable federal defense to Plaintiffs' design defect claims.

### 2. Causal Nexus

The causal nexus test of the Federal Officer Removal statute requires a showing that: (1) Defendants' actions, taken pursuant to the Navy and Air Force's directions, are "actions under" a federal officer and (2) those actions are causally connected to Plaintiffs' alleged injuries. *See Durham*, 445 F.3d at 1251. With regard to the first prong, "[t]he words 'acting under' are broad," and the Supreme Court "has made clear that the statute must be 'liberally construed.'" *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007) (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). "The relationship typically involves subjection, guidance, or control . . . ." *Goncalves*, 865 F.3d at 1245 (citations and internal quotation marks omitted). For a private entity to be "acting under" a federal officer, the private entity must be involved in "an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152.

General Dynamics asserts that the aircraft equipment it designed and constructed was specifically authorized by, and performed to the requirements of, the Air Force, and that its work was reviewed and inspected by Air Force personnel in the manufacturer's assembly and training facilities. (Heil Decl. ¶ 10 g.) Lockheed likewise argues that the military not only exerted direct control over aircraft design and manufacture, but also selected and supplied many of the B-57 aircraft components to Lockheed. (Jimenez Decl. ¶¶ 13–15.) These statements sufficiently demonstrate that Defendants helped or assisted a federal superior in its duties related to building a fleet of aircrafts for national defense purposes. Therefore, the first prong of the causal nexus requirement under Section 1442(a)(1) is sufficiently established.

For the final element of the causal nexus test, "the 'hurdle erected by [the causal-connection] requirement is quite low.'" *Goncalves*, 865 F.3d at 1244 (citation omitted). Indeed, a defendant "need show only that the challenged acts occurred *because of* what they were asked to do by the Government." *Goncalves*, 865

F.3d at 1245 (emphasis in original) (internal citations and quotation marks omitted).

As discussed above, Defendants allege that Plaintiffs' design defect claims are premised upon the same acts that Lockheed and General Dynamics performed under the military's direction, namely designing, developing, and manufacturing aircrafts pursuant to the government's specifications and requirements. In addition, Plaintiffs assert a causal connection between Defendants' alleged defective design of military aircrafts and Mr. Kruse's subsequent asbestos exposure. (Compl. ¶¶ 7–8.) Plaintiffs plead that Defendants "negligently and carelessly . . . manufactured . . . [and] designed . . . unreasonably dangerous" avionics equipment that "released respirable asbestos fibers . . . [which] proximately caused" Mr. Kruse's alleged asbestos-related injuries. (Compl. ¶ 7.) Therefore, the Court finds the final element of the causal nexus test satisfied.

As Defendants have sufficiently met their burden against both a factual and facial attack to jurisdiction under section 1442(a)(1), the Court has jurisdiction over this matter.

## V. CONCLUSION

For the foregoing reasons, the Court finds subject-matter jurisdiction over this action under 28 U.S.C § 1442(a)(1). Accordingly, the Court **DENIES** Plaintiffs' Motion to Remand. (ECF No. 140).

**IT IS SO ORDERED.**

June 18, 2020

_____
     **OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**